**Lawrence F. KRAMER**
**v.**
**The UNITED STATES.**
**No. 294-56.**

United States Court of Claims.
March 6, 1957.

Charles R. Richey, Washington, D. C., for plaintiff.

M. Morton Weinstein, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. David Orlikoff, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This is a suit for an informer's award under the False Claims Act, 31 U.S.C.A. §§ 231–235.

Jurisdiction is conferred on this court by the terms of Private Law 730, 84th Congress, 2d session, approved July 2, 1956, 70 Stat. A103. The provisions of the act are as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That jurisdiction is hereby conferred upon the United States Court of Claims to hear, determine, and render judgment upon the claim of Lawrence F. Kramer, of 354 East Forty-second Street, Paterson, New Jersey, in the manner hereinafter provided by this Act.

"Sec. 2. For the purposes of this Act, the said Lawrence F. Kramer (hereinafter referred to as "the claimant") shall establish to the satisfaction of the Court of Claims the

following: (1) That the claimant furnished the United States with information in 1935 regarding a fraudulent conspiracy, collusive bidding, and bribery in connection with certain sand and stone supply contracts, awarded or to have been awarded by the Works Progress Administration, in New Jersey; and (2) that the claimant collaborated with and assisted United States investigators and furnished them with leads which made more possible the Government's success in criminal prosecution numbered 8516b, United States District Court, District of New Jersey (1938), and Civil Action numbered 1956 which was filed on January 5, 1942, United States District Court, District of New Jersey, and in which the United States entered an appearance on March 11, 1944, and which was settled by way of compromise to the pecuniary benefit of the United States on March 4, 1952.

"Sec. 3. The Court of Claims shall accept as a basis for determining the service referred to in section 2 hereof the following: (1) all papers (or duly authenticated copies thereof), including transcripts of court proceedings, depositions, records, pleadings, orders, and exhibits filed in the criminal and civil causes referred to in section 2 hereof; and (2) the findings of fact and conclusions of law and opinion of the court in United States ex rel. Bayarsky against Brooks, et al. ([D.C.] 110 F.Supp. 175).

"Sec. 4. Upon determination by the Court of Claims that the claimant has complied with section 2 hereof, the claimant shall be deemed to have instituted a qui tam action and to be legally and equitably entitled to a judgment as hereinafter provided under the appropriate provisions of the False Claims Act which were in force at the time claimant's cause of action thereunder arose, namely, sections 3490 to 3494, inclusive, of the Revised Statutes (31 U.S.C., 1940 edition, secs. 231–235). In computing the amount of such judgment, the provisions of section 3493 of the Revised Statutes (31 U.S.C., 1940 edition, sec. 234), entitling the claimant to one-half of the costs and the recovery which was obtained by the Government in civil action numbered 1956, United States District Court, District of New Jersey, shall not apply but, instead, the claimant shall be entitled to recover only 30 per centum of the amount recovered in the said civil action numbered 1956, exclusive of the usual costs and expenses, by the United States on March 4, 1952.

"Sec. 5. Suit under this Act shall be instituted within six months after enactment hereof, and the judgment by the Court of Claims shall be final, and shall not be subject to review. Payment of such judgment shall be in the same manner as in the case of claims over which such court has jurisdiction as provided by law, and shall constitute full and complete settlement of all claims or demands of any nature whatsoever arising out of the litigation referred to in this Act."

The only factual issues for the court to decide are set out in section 2 of the act as quoted. Basically these are (1) whether the claimant furnished the information regarding a fraudulent conspiracy, collusive bidding and bribery in connection with sand and stone contracts awarded in New Jersey by the Works Progress Administration; and (2) whether the plaintiff worked with the United States investigators and furished leads which made "more possible" the Government's success in the criminal prosecutions which were settled by pleas of guilty and fines aggregating $225,000 which were paid to the Government.

The defendant, after an investigation, has conceded that both factual issues should be decided in plaintiff's favor.

Since the original issues of fact have been admitted the plaintiff makes a motion for summary judgment for the sum of $67,500, which on its face would seem to be well taken. Defendant, however, while conceding the plaintiff's right to recover under the terms of the special act, asserts that the defendant's expenses should first be deducted from the amount recovered by the Government and that the 30 per centum stipulated in the act should be calculated on the net balance.

The defendant bases its claim for a deduction on the provisions of section 4 of the private law which is set out above, the last clause of which is as follows:

"the claimant shall be entitled to recover only 30 per centum of the amount recovered in the said civil action numbered 1956, exclusive of the usual costs and expenses, by the United States on March 4, 1952."

It seems to us that a normal construction of this language, especially when read in connection with the other parts of the act, would indicate a clear intention on the part of the Congress that the court should render judgment for the flat sum of $67,500 if it should decide the two factual issues set out in section 2 of the private act favorably to the plaintiff. But the defendant earnestly insists that the clause in reference to costs and expenses should be construed to mean that such costs and expenses should be deducted from the amount recovered by the Government and that plaintiff should be given judgment for 30 per centum of the net balance.

The single remaining issue is the question of what was meant by the expression "exclusive of the usual costs and expenses" as used in the last sentence of section 4 of the private act.

Briefly the facts are as follows: In October 1935 the plaintiff, Lawrence F. Kramer, furnished information to an investigator of the Works Progress Administration concerning a conspiracy by certain quarry and sand pit owners to fix and maintain prices on crushed stone and sand purchased for WPA projects. An extensive investigation by the Govern-

ment resulted in both a criminal prosecution and a civil action for damages and penalties under the False Claims Act, 31 U.S.C.A. §§ 231–235. The civil suit was settled in 1952 by pleas of guilty on the part of 25 defendants and recovery of the sum of $225,000, which was paid to the United States.

The original False Claims Act, 12 Stat. 696, 698, as well as the amendments thereto, clearly provided that the informer-plaintiff shall be entitled not only to the stipulated award but shall in certain instances be allowed to add his costs and expenses to the amount of his recovery as provided in the award. The later amendments to such acts also provided that the informer-plaintiff may add costs and expenses to the award. At no place in the original False Claims Act or in the amendments thereto was there any provision for the defendant to deduct its own expenses in connection with the investigation from the amount which the plaintiff should receive.

The original bill in behalf of plaintiff was a jurisdictional bill like the instant one, and contained a provision that plaintiff should receive 25 percent of $225,000, plus 25 percent of $20,000, plus 25 percent of plaintiff's "expenses and costs incurred by him during the period 1935–1952 in assisting and enabling the United States to prosecute successfully * * *." The President vetoed the original bill, making the statement in the veto message to the effect that it did not appear that plaintiff contributed anything to the successful prosecution and civil recovery.

A new bill was introduced which became Private Law 730 and which is quoted at the beginning of this opinion. The Senate Report, No. 1593, 84th Congress, which accompanied this bill, stated that the purpose of the legislation was "to confer jurisdiction upon the Court of Claims to adjudicate this matter under the *False Claims Act*." [Emphasis supplied.]

In order to meet the objections of the President to the original bill, the new bill placed upon the court the matter of

determining from any evidence that might be adduced whether the plaintiff had made such a contribution. This fact has been determined favorably to the plaintiff. In the new bill, Private Law 730, the award was placed at a flat 30 per centum of the $225,000 settlement, or $67,500.

The bill further stipulates that the findings and conclusions of law in the opinion of the court in United States ex rel. Bayarsky v. Brooks, D.C., 110 F. Supp. 175, 180, should be accepted as a basis for determining the services rendered.

Findings 1 and 2 of the opinion in the Brooks case, supra, show clearly that the court in that case found that the plaintiff in the present case had contributed to the full scale WPA investigations that were undertaken and that he furnished the various leads concerning witnesses and individuals who would be able to furnish the Government with greater detail concerning the alleged improper activities in question. The court in that case found not only that Brooks, the plaintiff, had done nothing, but that Lawrence Kramer, the plaintiff in the instant case, "was not only the original spark that set the investigation in motion which has resulted in twenty-five guilty pleas, an aggregate of $20,000 in fines, and a civil recovery to the United States in the sum of $225,000, but that he continued to collaborate with the investigators furnishing various leads, all of which made more possible the results above indicated."

In commenting on Kramer's claim to an informer's fee under the statute, the court stated that "he was not the person 'who brought such suit' as required by the statute, and therefore unfortunately his claim is not within the jurisdiction of this Court." In other words, the district court in the Brooks case in effect held that if Lawrence Kramer, the plaintiff in the instant case, had been the claimant in that case the result would have been different.

Private Law 730 stipulated that the judgment should be entered under the appropriate provisions of the False Claims Act which were in force at the time plaintiff's cause of action arose. Since the provisions of the False Claims Act and amendments thereto refer only to any expenses which the plaintiff may have incurred, it is manifest that the final clause of section 4 of the private law has reference to the usual costs and expenses which the plaintiff may have incurred.

The entire history of the False Claims Act and amendments thereto, as well as the legislative history and committee reports in connection with the original special act in behalf of plaintiff, and the new act which finally became law show clearly that the clause used had reference to the costs and expenses incurred by the plaintiff. In the light of these various provisions and the history of the legislation, for the court to adopt any other construction would be like following "blind guides, which strain at a gnat, and swallow a camel."

Plaintiff's motion for summary judgment is granted. He is entitled to recover from the defendant the sum of $67,500.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.